IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 15, 2020

**IN RE ESTATE OF SAMUEL DATTEL**

**Appeal from the Probate Court for Shelby County**
**No. PR-5516     Karen D. Webster, Judge**

**No. W2019-00800-COA-R3-CV**

Decedent died in 2015 and his widow submitted his latest will for probate in March 2016. Children from a prior marriage filed a will contest in August 2016, alleging a will dating from 1984 constituted Decedent's last will and testament and all later wills were the result of fraud and undue influence. The widow and her children challenged the will contest on various grounds, all of which the probate court rejected. The probate court entered an order directing the court clerk to certify the will submitted to probate in addition to three earlier original wills and a partial codicil to the circuit court for a trial to determine which document(s), if any, constituted Decedent's last will and testament. We affirm the decision of the probate court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and CARMA DENNIS MCGEE, J., joined.

Edward T. Autry and Steven N. Snyder, Jr., Memphis, Tennessee, for the appellants, Audrey Dattel Belvin, Rosemarie Justus Dattel, and Mark Russell Dattel.

John R. Branson, Memphis, Tennessee, for the appellee, Lisa Ann Dattel.

Timothy R. Johnson and John A. Stevenson, Memphis, Tennessee, for the appellee, Andrew R. Dattel.

Brenda Dattel Meece, Memphis, Tennessee, pro se.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Samuel Dattel ("Mr. Dattel" or "the Decedent") died on September 13, 2015. On March 2, 2016, his widow, Rosemarie Justus Dattel, submitted his Last Will and Testament dated September 9, 2002 ("the 2002 Will"), to the probate court and asked to be appointed the personal representative of Mr. Dattel's estate. The probate court admitted the 2002 Will to probate, appointed Mrs. Dattel the estate's personal representative, and issued her letters testamentary. Five months later, on August 5, 2016, Brenda D. Meece and Lisa Ann Dattel ("the Contestants"), two of the Decedent's children from a previous marriage, filed a Notice of Contest and Motion to Certify Will Contest ("Notice of Contest"). In their Notice of Contest, the Contestants referenced other wills and trusts that Mr. Dattel purportedly executed in 1995, 1993, and 1990, and a codicil to a 1984 will that dated from 1988 ("the 1988 Codicil"). The Contestants stated in their Notice of Contest that they contested the 2002 Will, a revocable living trust by Mr. Dattel dated September 9, 2002 ("2002 Trust"), and the other will and trust documents executed between December 5, 1984, and September 9, 2002. The Contestants asserted that Mr. Dattel executed a Last Will and Testament dated December 5, 1984 ("the 1984 Will"), and that "the 1984 Will is the valid Last Will and Testament of the decedent and should be admitted to Probate." The Contestants alleged that all will and trust documents dated after December 5, 1984, were procured by undue influence and were executed when Mr. Dattel lacked testamentary capacity. The Contestants expressed their desire to proceed in circuit court and asked the probate court to certify their right to contest the 2002 Will and 2002 Trust in addition to all other will and trust documents dated after December 5, 1984, that might be admitted to probate. The Contestants attached to their Notice of Contest a verified complaint to be filed in the circuit court when and if the probate court certified their right to contest the 2002 Will and 2002 Trust that Mrs. Dattel filed with the probate court.

Mrs. Dattel and her two children, Mark Russell Dattel and Audrey Dattel Belvin ("the Proponents"), filed a motion to dismiss the Contestants' Notice of Contest, or in the alternative, for summary judgment, on the basis that the Contestants lacked standing to contest the 2002 Will and 2002 Trust. The trial court held the Proponents' motion in abeyance pending a ruling by the Tennessee Supreme Court in the case *In re Estate of Brock*, 536 S.W.3d 409, 412 (Tenn. 2017), which addressed the question whether individuals contesting a will have standing if they are disinherited by successive wills that are facially valid. Once the Supreme Court announced its decision in *Brock*, the Proponents conceded that the Contestants had standing to contest the 2002 Will and 2002 Trust. *See Brock*, 536 S.W.3d at 419 (holding contestants have standing to contest will if they would share in estate in the event no will existed and will submitted for probate were set aside).

The Contestants filed amended notices of contest in February and March 2018. The Proponents responded to the Second Amended Notice of Contest, arguing that the probate court should certify only the 2002 Will to the circuit court and should dismiss the Contestants' request to certify the 2002 Trust and all prior wills Mr. Dattel executed subsequent to the 1984 Will. According to the Proponents, unless the validity of the 2002 Will was successfully challenged, the question of the validity of any prior will was not properly before the court.

On May 17, 2018, Andrew R. Dattel, who was a full brother of the Contestants, filed a Notice of Contest and Intervening Petition/Motion to Certify, in which he set forth his intention to join in the contest initiated by his sisters (all three contestants will be referred to henceforth as "the Contestants"). The Proponents did not object to Andrew Dattel's motion to intervene.

The probate court held a hearing on May 16, 2018, to consider all pending motions. In an order entered on June 29, 2018, the court acknowledged that the holding in *Brock* controlled the standing issue in the case at bar and concluded that the Contestants, "as well as anyone similarly situated, have demonstrated that they have standing to contest the 2002 will, as well as any previously executed wills." The court then referenced the statute governing its obligation to enter an order sustaining or denying a contestant's right to contest a will, Tenn. Code Ann. § 32-4-101,[1] and ruled that the Contestants presented a valid will contest in their Second Amended Notice of Contest.

---

[1]Tennessee Code Annotated section 32-4-101 provides as follows:

(a) If the validity of any last will or testament, written or nuncupative, is contested, then the court having probate jurisdiction over that last will or testament must enter an order sustaining or denying the contestant's right to contest the will. If the right to contest the will is sustained, then the court must:

(1) Require the contestant to enter into bond, with surety, in the penal sum of five hundred dollars ($500), payable to the executor mentioned in the will, conditioned for the faithful prosecution of the suit, and in case of failure in the suit, to pay all costs that may accrue on the suit; and

(2) Cause a certificate of the contest and the original will to be filed with the appropriate court for trial.

(b) As used in this section, the term "the appropriate court for trial" means the court elected by the contestant, in the notice of contest, to conduct a trial upon the validity of the will.

The court next considered which will and trust documents, if any, it should certify to the circuit court in addition to the 2002 Will and 2002 Trust.[2] Finding that the Contestants filed notices to contest the 2002 Will and all prior wills the Decedent executed other than the 1984 Will, the court noted that no will other than the 2002 Will had been propounded or offered to probate. Thus, the court concluded, "it [could] not take any action regarding these additional wills until they are at a minimum propounded, presented, or offered to this Court for probate." However, the probate court stated, "the additional wills in this case shall all be consolidated and certified in the will contest once properly before this Court." The court gave the parties thirty days to propound, present, or offer to probate any and all wills the Decedent executed prior to 2002. If the parties failed to take any further action within thirty days, the court stated, it would issue a certificate of contest for the 2002 Will and transfer it to the circuit court for a trial.

The Contestants filed a statement on July 26, 2018, which was within the thirty-day time period set by the court, explaining that they had copies of the Decedent's pre-2002 will and trust documents but had been unable thus far to locate the original documents. On September 5, 2018, the Proponents deposited with the court clerk the Decedent's original will dated 1995 ("the 1995 Will") and the Decedent's original will dated 1993 ("the 1993 Will"). On October 5, 2018, the Contestants filed a second statement in which they informed the court of the steps they were taking to locate the original 1988 Codicil in addition to the original wills dating from 1984 and 1990. On November 9, 2018, the Contestants filed a notice with the court stating that they had located the original 1984 Will and one page of the 1988 Codicil and had deposited both documents with the clerk of the court.

The Contestants filed a Third Amended Notice of Contest on November 9, 2018. In this document, the Contestants stated that the 2002 Will and 2002 Trust had been submitted to probate; the original wills dating from 1995 and 1993 were deposited with the court clerk on September 5, 2018; the 1984 Will and one page of the 1988 Codicil had been deposited with the court clerk on November 9, 2018; and the original will dating from 1990 and the complete 1988 Codicil were not located. The Contestants restated their election to proceed in circuit court upon certification by the probate court of their contest of the various will and trust documents. The Contestants asked the probate court to certify for a consolidated contest the 2002 Will, the 2002 Trust, the 1995 Will, and the 1993 Will.[3] On November 13, 2018, the probate court held a status conference and entered an order stating that the parties would have until December 13, 2018, to propound, present, or offer to the court "any additional testamentary documents other

---

[2]The court noted that the Proponents conceded at the hearing on May 16, 2018, that it was reasonable to include the 2002 Trust with the 2002 Will for certification once the circuit court had the opportunity to determine their validity.

[3]The Contestants asked the court to declare that the will dated 1990 and the 1988 Codicil were presumed revoked because they were unable to be located in full or original form.

- 4 -

than the 2002 Will, which was admitted to probate by Order entered March 2, 2016, for consideration for inclusion to the certificate of contest." Consistent with this order, the Contestants filed a verified petition on November 29, 2018, to present, propound, and/or offer to probate the 1995 Will, the 1993 Will, and the 1984 Will.

On January 15, 2019, the Proponents moved to dismiss the Contestants' verified petition dated November 29, 2018. The basis of the Proponents' motion was that the Contestants had failed to comply with the original thirty-day deadline the court set in its order dated June 29, 2018. Because the Contestants failed to comply with the court's order within the prescribed time period and chose not to seek to modify or appeal the June 29 order, the Proponents argued that the probate court should immediately issue a certificate of contest for the Decedent's 2002 Will only and transfer the matter to the circuit court for a trial on the merits of the Contestants' contest.

The probate court held a hearing on February 27, 2019, to consider the Contestants' verified petition dated November 29, 2018, and the Proponents' motion to dismiss the petition. In an order dated April 10, 2019, the court granted the Contestants' verified petition and denied the Proponents' motion to dismiss; it directed the Proponents and Contestants each to post a bond in the amount of $500; and it directed the court clerk to issue a certificate of contest and transmit the following documents to the circuit court clerk: the 1984 Will, the portion of the 1988 Codicil that was deposited with the court clerk, the 1993 Will, the 1995 Will, and the 2002 Will. The court incorporated into its order the transcript of the hearing on the parties' motions, during which it explained the basis for its denial of the Proponents' motion to dismiss. The court made the following statements during the hearing:

> In regards to the motion to dismiss the verified petition to present, propound and or to offer to probate certain testamentary documents, additional documents that had not already been addressed in the previous probate order of the Court.

> The Court had already determined the standing issue [in the earlier hearing]. That was not an issue at this point. The Court had already considered the language in the *Estate of Brock* and noting that heirs had a right to contest what appeared to be a line of sequence of proposed wills. But we only had at that point when the Court was considering this matter, the most recent will, which was the 2002 will. Nothing else was presented to the Court, but the Court from the proof and from the testimony and from the statements of counsel it was pretty clear that there were other purported wills out there.

> So in the Court ordering that there was standing and that there was a right to contest the 2002 will the Court was trying to move the case along

- 5 -

as expeditiously as possible to get those other documents before the Court in some way, form or fashion. Mr. Branson says my clients don't have them. We don't have them, and Mr. Autry said well, I don't know and perhaps, and then there was this effort, this joint effort I will take it to pursue the documents so as to comply with the Court's interpretation of *Brock*.

Now the Court set 30 days and the Court was very hopeful, but unfortunately, due to the circumstances of this particular case, the 30 days was not met. But you understand the underlying issue before the Court, or responsibility of the Court was to get these documents before the requested court, which was the Circuit Court, the selected court, so that Mr. Samuel Dattel's intention under whatever is or is determined to be his final last will and testament to be determined. That was the hope under the entire thing, and were the Court to grant the motion to dismiss, the Court would be defeating the whole purpose of this action to get all of the documents before the Circuit Court so that the Circuit Court can determine which of the documents, if any of them, comprise Mr. Dattel's last will and his desires, and how he wants his property distributed.

So therefore, for that reason and that was the only purpose that deadline was set, the hard deadline, as Mr. Snyder has indicated, was set. And in fact, the Court specifically retained jurisdiction to allow the parties to seek or to locate and to propound, present and to offer those documents. So nothing was certified and nothing was done, and just to give the parties the time. The 30 days was to make it move a little bit more expeditiously. Unfortunately it didn't happen in 30 days. Like I said, I was overzealous in my effort to get you all to move, but nevertheless, there are some documents sitting in front of me now. So I'm not going to grant a motion to dismiss so that the Circuit Court cannot be presented these documents.

So for those reasons the Court still has subject matter jurisdiction at this point. The Court will not let a procedural deadline stand in the way of substantively deciding this issue, so the Court is going to deny the motion.

Lisa Ann Dattel, one of the Contestants, testified at the hearing on February 27, 2019, and she identified what appeared to be her father's (the Decedent's) signatures on the 1984 Will, the 1988 Codicil, the 1993 Will, the 1995 Will, and the 2002 Will. The Proponents argued that the probate court should certify only the 1984 Will and the 2002 Will to the circuit court, and that the 1988 Codicil, the 1993 Will, and the 1995 Will should not be certified or be included in the trial to be held in circuit court to determine which will constituted the Decedent's last will and testament. In denying the Proponents' request, the probate court stated the following during the hearing on February 27, 2019:

[E]xactly what Mr. Stevenson [Andrew R. Dattel's attorney] stated is what the Court intends because I'm trying to make sure that whatever the Circuit Court has before it and it has everything that it needs so nothing will need to come back here. So it will be useless or it will be, I guess, it wouldn't be a wise use of the time and resources and assets of this estate to have the case continue to come back here. So the Court is inclined to certify a will contest, and which it has already done for the 2002 will. But the Court is going to expand or to enlarge that will contest to include all of the documents, and that's the reason why I really needed Ms. Dattel to, at least, to identify them. And I'm looking at each and every one of them, and they are indicating last will and testament of Samuel Dattel. They have signatures on them. She has identified the signatures except for the one that says it's a codicil to the last will. It's a one page codicil. But nevertheless, these are all appearing to be testamentary instruments that has Mr. Samuel Dattel's name on it and his signature is on it. And so this Court isn't determining which is the valid one. I do know that there is a dispute regarding the validity of at least two of them. So the Court is going to certify them all and enlarge the will contest and consolidate them all in the will contest to let the Circuit Court sort it out.

The Proponents appealed the probate court's April 10, 2019 order and raise the following issues on appeal: (1) whether the Contestants initiated a will contest despite the fact that they failed to file a verified complaint; (2) whether the Contestants are time-barred from initiating a will contest pursuant to Tenn. Code Ann. § 32-4-108 because they failed to file a verified complaint within two years of the 2002 Will's being admitted to probate; (3) whether the probate court erred in sustaining the Contestants' right to contest the wills of the Decedent and certifying a will contest to the circuit court; (4) whether the circuit court has subject matter jurisdiction; and (5) whether the probate court erred in certifying a single will contest to the circuit court for the five testamentary documents at issue and ordering all five documents to be transmitted to the circuit court.

II. ANALYSIS

A. Waiver of Issues not Raised Before the Probate Court

The Proponents argue on appeal that the Contestants failed to initiate a will contest properly because they filed a notice of contest rather than a verified complaint and that the Contestants are now barred by the statute of limitations[4] from filing a verified

---

[4]Tennessee Code Annotated section 32-4-108 requires that will contests "must be brought within two (2) years from entry of the order admitting the will to probate, or be forever barred . . . ."

complaint to initiate their will contest. They also argue that the Contestants failed to issue a summons to any of them as required by law. Our review of the appellate record shows that while this case was pending in the probate court, the Proponents did not raise any of these issues. The Proponents moved to dismiss the Contestants' initial Notice of Contest, they moved to dismiss a part of the Contestants' Second Amended Notice of Contest, and they moved to dismiss the Contestants' verified petition. However, they failed to question the form the Proponents used to contest the 2002 Will in any of their filings with the probate court,[5] and they never raised a statute of limitations or service of process argument, thus depriving that court of the opportunity to address these issues. *See Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 355 (Tenn. Ct. App. 2009) (stating that trial court cannot be faulted for ruling in particular way when it had no opportunity to address issue raised on appeal).

"It is well established that an issue not raised in the trial court cannot be raised on appeal." *PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 663 (Tenn. Ct. App. 2012); *see also Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006); *McNeary v. Baptist Mem'l Hosp.*, 360 S.W.3d 429, 445 (Tenn. Ct. App. 2011). Moreover, Rule 8.03 of the Tennessee Rules of Civil Procedure provides that a party making a statute of limitations argument must plead it as an affirmative defense, and Rule 12.02 requires a party to raise a defense of insufficiency of process or service of process in a responsive pleading or motion. A party waives all defenses and objections based on any of these grounds if the party fails to raise them by motion or in an answer or reply. TENN. R. CIV. P. 12.08. Because the Proponents failed to raise any of these issues before the probate court, they are precluded from raising them on appeal.[6]

The Proponents' arguments that the probate court erred in sustaining the Contestants' right to contest the wills of the Decedent and certifying their will contest to the circuit court and that the circuit court lacks subject matter jurisdiction to hear the Contestants' contest are both premised on their contention that the Contestants failed to initiate their will contest properly. Having determined that the Proponents waived their

---

[5]The Court of Appeals held in *In re Estate of Boote*, 198 S.W.3d 699, 715 (Tenn. Ct. App. 2005), that "[t]here are no formal requirements for the initiation of a will contest." *See also In re Estate of Boye*, No. E2006-01441-COA-R3-CV, 2007 WL 3124424, at *4 (Tenn. Ct. App. Oct. 26, 2007).

[6]The Proponents also argue on appeal that the probate court failed to grant Andrew R. Dattel the right to intervene and join the other Contestants in the will contest, and that he is not properly included in the case as a contestant. The probate court recognized the attorney for the intervenor during the hearing on February 27, 2019, and allowed him to argue in support of the Contestants' position. The Proponents did not object to the intervenor's participation in the hearing or complain that the court had not granted him the right to intervene. Because the Proponents failed to raise this issue before the probate court, we conclude that they have waived this issue on appeal. *See In re Estate of Boote*, 198 S.W.3d at 713 (stating that everyone who claims interest in estate has right to participate in will contest).

right to question the form of the Contestants' will contest by failing to raise this issue in the probate court, we find these additional arguments to have no merit.[7]

B.  Certification of Five Separate Will Instruments for a Single Contest in Circuit Court

The final argument the Proponents raise on appeal is that the probate court erred in certifying five testamentary instruments to the circuit court when only the 2002 Will had been admitted to probate.  The Tennessee Supreme Court addressed this issue in *In re Estate of Brock*, 536 S.W.3d at 410, which involved a will contest by five of a decedent's seven children.  As in this case, the decedent in *Brock* had executed numerous wills before the latest will the proponents submitted for probate.  *In re Estate of Brock*, 536 S.W.3d at 412.  Acknowledging that a will contest allows a court to determine "once and for all, about how a decedent's estate should be distributed," *id.* at 413-14, the Court held that the competing instruments at issue "must all be submitted for adjudication in the will contest," *id.* at 419.  The Court wrote:

> It is true, as the Proponents point out, that it will be no easy task for Contestants to mount a successful will contest on the 2013 and prior wills. But, as already noted, a litigant need not establish a likelihood of success on the merits to establish standing. Furthermore, although the Proponents are correct that expeditious and inexpensive administration of estates is a laudatory objective, "fraud should never be insulated from the reach of the court because the court may have more work to do to detect and correct the fraud." *Estate of Malcolm*, 176 Ill. Dec. 734, 602 N.E.2d [41, 44 (1992)]. Thus, on remand, and consistent with the purpose of a will contest, a determination will be made, once and for all, about how Dr. Brock's estate should be distributed.

*Id.*; *see also Jones v. Witherspoon*, 187 S.W.2d 788, 791 (Tenn. 1945) ("all documents of testamentary character or significance, may, under proper instruction and limitation by the trial judge, be introduced in the will contest and submitted to the jury for their consideration"); *In re Estate of Boote*, 198 S.W.3d at 714 ("Where the parties dispute which wills and codicils represent the decedent's last valid will and testament, the competing instruments must all be submitted to the trial court for adjudication in the will contest."); *Green v. Higdon*, 870 S.W.2d 513, 520 (Tenn. Ct. App. 1993) ("Several contests involving several wills of the same person may be consolidated for trial.").

---

[7]The Proponents also take issue with the Contestants' failure to post a prosecution bond as required by Tenn. Code Ann. § 32-4-101(a)(1).  The appellate record does not indicate that the probate court clerk issued a certificate of contest or transmitted the trust documents to the circuit court before the Proponents filed their notice appealing the probate court's order denying their motion to dismiss the Contestants' verified petition.  The Contestants are not required to post a bond until such time that the certificate of contest is issued and the trust documents are transmitted to the circuit court.  Tenn. Code Ann. § 32-4-101.  Thus, the Proponents' argument regarding the Contestants' failure to post their prosecution bond is premature.

The Proponents contend that the main issue in *Brock* involved the contestants' standing and that the portion of the Supreme Court's opinion directing all of the decedent's testamentary instruments to be submitted together for the will contest "can at best be classified as *dicta*." The contestants' standing was at issue in *Brock*, but we do not agree with the Proponents that the Court's opinion regarding the instruments to be considered in determining the decedent's valid last will and testament on remand should be disregarded as mere dicta. "Dictum" has been described as "a remark or opinion uttered by the way" that "has no bearing on the direct route or decision of the case but is made as an aside." *Staten v. State*, 232 S.W.2d 18, 19 (Tenn. 1950). The portion of the *Brock* Court's opinion directing all of the decedent's wills to be submitted together for an adjudication of the decedent's final wishes on remand can certainly not be said to have no bearing on the route or direction of the case. In a more recent discussion of the meaning of dictum, our Supreme Court has written the following:

> [T]rial courts must follow the directives of superior courts, particularly when the superior court has given definite expression to its views in a case after careful consideration. *Taylor v. Taylor,* 162 Tenn. 482, 488-89, 40 S.W.2d 393, 395 (1931); *Rose v. Blewett,* 202 Tenn. 153, 161-62, 303 S.W.2d 709, 712-13 (1957); *Davis v. Mitchell,* 27 Tenn. App. 182, 223-24, 178 S.W.2d 889, 905-06 (1943). Accordingly, inferior courts are not free to disregard, on the basis that the statement is *obiter dictum,* the pronouncement of a superior court when it speaks directly on the matter before it, particularly when the superior court seeks to give guidance to the bench and bar. To do otherwise invites chaos into the system of justice.

*Holder v. Tenn. Judicial Selection Comm'n*, 937 S.W.2d 877, 881-82 (Tenn. 1996) (footnote omitted). The *Brock* Court was speaking directly upon the matter before it and was providing guidance to the bench and bar when it directed all of the decedents' testamentary instruments to be submitted together for adjudication in the will contest. Moreover, as the Supreme Court has acknowledged, "'[p]ublic policy demands that the court should shorten, as far as possible, litigations, lest the estate should be more or less absorbed as a result of expensive court costs and other expenses of litigation.'" *Jones*, 187 S.W.2d at 791 (quoting *Lillard v. Tolliver*, 285 S.W. 576, 579 (Tenn. 1926)). We conclude that the trial court did not err in certifying all five testamentary documents at issue to the circuit court so that the court could decide how Mr. Dattel's estate should be distributed.

## III. CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Rosemarie Justus Dattel, Mark Russell Dattel, and Audrey Dattel Blevin, for which execution may issue if necessary.

- 10 -

_____
ANDY D. BENNETT, JUDGE